UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-12447-RCL

)
JEFFREY SMITH,                    )
                                  )
        Plaintiff                 )
                                  )
v.                                )
                                  )
CHARLIE'S PLACE, INC.,            )
                                  )
        Defendant                 )
_____  )

## MOTION TO STAY PROCEEDINGS WITH STATEMENT OF REASONS AND LEGAL AUTHORITIES

**NOW COMES** the defendant in the above referenced matter and hereby

moves to stay all proceedings for a period of eight months until January 15, 2006

for the reasons stated as follows:

*The Parties' Claims and Relevant Procedural History*

The plaintiff, Jeffrey Smith, commenced this action seeking a temporary

and permanent injunction and declaratory relief pursuant to the Americans with

Disabilities Act of 1990, 42 U.S.C., § 12181, *et. seq.* ("ADA") "to remedy unlawful

discrimination by the Defendant against the Plaintiff in the Defendant's place of

public accommodation" on November 16, 2004.  In essence, the plaintiff claims,

*inter alia*, that the defendant's failure to remove architectural barriers that have

existed since the defendant's restaurant was constructed in 1973 denied him the

ability to access the defendant's place of business.

The defendant, Charlie's Place, Inc. ("Charlie's Place"), denies that it is in violation of the ADA or that the plaintiff has been denied access to the defendant's place of business. As a business that was established in 1973, prior to the adoption of the ADA, the defendant asserts that it is not required to remove the architectural barriers identified in the plaintiff's complaint to the extent that they exist since they do not deny the plaintiff effective access to the defendant's place of business and that their removal cannot be readily and feasibly accomplished without undue burden and expense. The defendant also asserts that the plaintiff, who has filed at least five other cases under the ADA, which are virtually identical, is a serial plaintiff and not entitled to the relief sought.

## Facts in Support of this Motion

Charlie's Place is a small family owned and operated restaurant located at 3075 Cranberry Highway in Wareham, Massachusetts and was constructed in 1973. [Affidavit of Harry Nickolaow ¶2] While it is the defendant's position that Charlie's Place is in full compliance with the requirements of the ADA for older pre-existing structures and, as an older building, is under no duty to be retrofit, the owners of Charlie's Place had planned to make renovations to increase accessibility to handicapped patrons prior to the commencement of this action. [Affidavit of Harry Nickolaow ¶5] Indeed, the defendant began discussions with contractors concerning such renovations in the Spring of 2004 and had obtained an estimate by August 5, 2004 from W.H. Hall, General Contracting to relocate the existing stairs and entryway, install a handicap ramp and renovate existing bathroom facilities. The cost of these renovations based upon the estimate is

$37,035. It was the defendant's intention to begin these renovations in the spring of 2005 as soon as weather permitted so that renovations could be completed before the busy summer season.    [Affidavit of Harry Nickolaow ¶6]  All of this was completed prior to the filing of the plaintiff's complaint.

On January 21, 2005, following service of the plaintiff's complaint upon the defendant and in an effort to seek a fair and equitable resolution of this matter, counsel for the defendant wrote to the attorney for Jeffrey Smith, Edward N. Garno, Esquire, to notify him that – despite the fact that Charlie's Place (1) was constructed in 1973, (2) was not required to remove the architectural barriers identified in the plaintiff's complaint, (3) did not deny the plaintiff effective access to the defendant's place of business, and (4) could not be readily and feasibly remove the pre-existing barriers without undue burden and expense – prior to the commencement of the plaintiff's action, Charlie's Place had already planned renovations that would increase accessibility to handicapped patrons.  [Affidavit of Counsel, Exhibit 1].  Counsel for the defendant explained that in addition to the planned renovations, Charlie's Place offers (1) curbside take-out and delivery service to any customer during all business hours, including the neighborhood where Jeffrey Smith lives; (2) clearly marked handicapped parking; and (3) assistance in accessing the dining area of the restaurant to handicapped patrons who desire it.  [Affidavit of Counsel, Exhibit 1]

On March 9, 2005, Attorney Garno was provided with a copy of the construction estimate that was obtained on August 5, 2004 and invited to inspect the defendant's place of business with counsel for the defendant for the purpose

3

of providing him with reasonable assurance that the contemplated renovations would remove any perceived architectural barriers and be completed within a reasonable period of time. [Affidavit of Counsel, Exhibit 2]

On March 28, 2005, at the invitation of the defendant, Attorney Garno toured Charlie's Place and was provided with a detailed explanation of the planned renovations. At a meeting with counsel for the defendant following the inspection of Charlie's Place, and after receiving a detailed explanation of the planned renovations and assurances as to their date of completion, Attorney Garno demanded for the first time that any settlement in this case must necessarily include the payment of his attorneys fees by the defendant. At that time and in a letter written to Attorney Garno on April 4, 2005, the defendant took the position that Attorney Garno's demand for attorneys fees was improper since the commencement of this litigation had nothing to do with the planned renovations that had been contemplated for months prior to the filing of the plaintiff's complaint. [Affidavit of Counsel, Exhibit 3]

On April 4, 2005, counsel for the defendant explained that the construction costs associated with the contemplated renovations were a substantial economic burden for the defendant and that Charlie's Place could not afford both the planned renovations *and* the payment of legal fees that it viewed as unwarranted and unjustified. Counsel wrote: "It is for these reasons that I respectfully urge you to reconsider your position. My client intends to complete the renovations as planned and described in the proposal dated August 5, 2004. In the spirit of the ADA, we are prepared to enter into a settlement agreement incorporating the

4

details of that proposal and provide you with reasonable assurance that the renovations will be completed by a date certain. Such a resolution in this case would not only be in the best interests of the parties but is also consistent with the spirit and intent of the ADA." [Affidavit of Counsel, Exhibit 3]

On April 19, 2005, in response to counsel's letter of April 4, 2005, Attorney Garno wrote to counsel for the defendant to, among other things, reiterate his demand that the defendant pay his legal fees despite the fact that the filing of the complaint in this matter had nothing to do with the planned renovations. [Affidavit of Counsel, Exhibit 4]    Later, on May 5, 2005, Attorney Garno wrote to defendant's counsel with a "proposal of settlement" that required renovations far in excess of the ADA's mandate and reiterated his demand for attorney's fees and costs. [Affidavit of Counsel, Exhibit 6]  On May 11, 2005, counsel for the defendant wrote to Attorney Garno to restate his position that, *inter alia*, the demand for attorney's fees was entirely unjustified and in fact threatened to delay construction of the renovations so long as the demand remained unresolved. [Affidavit of Counsel, Exhibit 7]

## Legal Argument

I.   Under the Circumstances of this Case, a Stay in the Proceedings Best Meets the Purposes and Intended Effect of the Americans with Disabilities Act

Unless the Court stays the proceedings for a period of eight months, the planned renovations at Charlie's Place cannot be completed, because plaintiff's demand for attorney's fees will place an unwarranted financial burden on the defendant. In fact, Attorney Garno's unreasonable and insistent demand for

5

attorney's fees – for legal services that are at best redundant and unnecessary – will force the defendant to litigate this case in a full and complete manner, which will in turn make any planned renovations at Charlie's Place prohibitively expensive and therefore not "readily achievable" under the ADA. In other words, Attorney Garno's demand for fees that he has not legitimately earned will create a financial burden on the defendant's business that will ruin any possibility of its making the planned renovations that are intended to go beyond the requisite compliance with the ADA.

II.     The Americans with Disabilities Act Is Intended To Be
        Flexible in Ensuring That Places of Public Accommodation
        Can Comply with the Requirements of the ADA and Still
        Survive as a Business.

The ADA was not created to impose undue financial burdens on the owners of small businesses. It is not intended to be harsh and inflexible. In this connection, the Department of Justice ("DOJ") is charged with enforcing the ADA and is the most knowledgeable source for the practicalities involved in ensuring that the ADA creates a fair outcome both for people and businesses. The ADA Standards for Accessible Design, published by the DOJ (28 CFR Part 36, revised July 1, 1994) reflect the flexibility that Congress built into the ADA. The "specific requirements" for "removal of barriers" in places of accommodation states: "A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is *readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.* (Sec.36.304(a)) (emphasis added) Not surprisingly, the meaning of "readily achievable", "easily accomplishable", and

6

"without much difficulty or expense" has generated a great amount of discussion

and sometimes confusion.

The DOJA has fully addressed and explained these concepts on its

website. For example, the DOJ clearly states that it is a "myth" that the ADA "is

rigid and requires businesses to spend lots of money to make their existing

facilities accessible."[1] Instead, the DOJ interprets the ADA in the following way:

> The ADA is based on common sense. It recognizes that altering
> existing structures is more costly than making new construction
> accessible. The law *only* requires that public accommodations (e.g.
> stores, banks, hotels, and restaurants) remove architectural
> barriers in existing facilities when it is "readily achievable", i.e., it
> can be done "without much difficulty or expense." Inexpensive,
> easy steps to take include ramping one step; installing a bathroom
> grab bar; lowering a paper towel dispenser; rearranging furniture;
> installing offset hinges to widen a doorway; or painting new lines to
> create an accessible parking space.[2]

The DOJ, in its interpretative information, dispels the myth that the

government believes that "everything is readily achievable." Instead, it advises:

> Often it may not be readily achievable to remove a barrier --
> especially in older structures. Let's say a small business is located
> above ground. Installing an elevator would not, most likely, be
> readily achievable -- and there may not be enough room to build a
> ramp -- or the business may not be profitable enough to build a
> ramp. In these circumstances, the ADA would allow a business to
> simply provide curbside service to persons with disabilities.[3]

Thus, the duty of an existing, established business under the ADA to

make reasonable accommodations is not expected to occur without regard to the

financial realities of the business. The DOJ states in that regard:

> Businesses are only required to do what is readily achievable at
> that time. A small business may find that installing a ramp is not

---

[1] www.usdoj.gov/crt/ada/pubx/mythfct.txt
[2] Id.
[3] Id.

7

readily achievable this year, but if profits improve it will be readily achievable next year. Businesses are encouraged to evaluate their facilities and develop a long-term plan for barrier removal that is commensurate with their resources.[4]

Of great value is the DOJ explanation of the term "readily achievable" in

the context of the ADA. It lists a variety of factors that businesses are entitled to

consider as they evaluate the extent to which they must comply with the ADA:

'Readily achievable' means accomplishable and able to be carried out without much difficulty or expense. Determining if barrier removal is readily achievable is, by necessity, a case-by-case judgment. Factors to consider include:

1) The nature and cost of the action;

2) The overall financial resources of the site or sites involved; the number of persons employed at the site; the effect on expenses and resources; legitimate safety requirements necessary for safe operation, including crime prevention measures; or any other impact of the action on the operation of the site;

3) The geographic separateness, and the administrative or fiscal relationship of the site or sites in question to any parent corporation or entity;

4) If applicable, the overall financial resources of any parent corporation or entity; the overall size of the parent corporation or entity with respect to the number of its employees; the number, type, and location of its facilities; and

5) If applicable, the type of operation or operations of any parent corporation or entity, including the composition, structure, and functions of the workforce of the parent corporation or entity....[5]

The DOJ regulations make clear the great flexibility that is intended in the

ADA so that, over time, persons with physical handicaps can increase their

access to places of public accommodation without debilitating the financial

---

[4] Id.

[5] www.usdoj.gov/crt/ada/adata1.pdf

8

resources of existing businesses. This makes eminent sense, because if a business if forced to close in the face of insurmountable expenses mandated by a law intended to increase access, then access is denied to all.

III. Charlie's Place Is Currently in Full Compliance with the Requirements of the ADA.

When the DOJ's analysis is applied to the facts of this case, it is clear that Charlie's Place – even in the absence of doing anything more – is already in compliance with the letter and spirit of the ADA. The determination of whether a particular modification is reasonable within the meaning of the ADA involves a fact-specific, case-by-case inquiry that considers, among other factors, effectiveness of modification in light of the nature of the disability in question and the cost to the organization that would implement it. *Sharon v. McDonald's Corp.*, 51 F.3d 353 (2ⁿᵈ Cir. 1995).

Charlie's Place is a family business in a Cape Cod town. The building was constructed in 1973. Its income has seasonal ups and downs. It is not a subsidiary of a parent corporation. It is not a McDonald's or a Burger King. Nevertheless, the family that owns the business has had a longtime commitment to providing the best access that it can to persons with physical challenges. In this commitment, Charlie's Place has consistently operated within the spirit of the ADA. "While it is not possible for many businesses, especially small businesses, to make their facilities fully accessible, there is much that can be done without much difficulty or expense to improve accessibility. Therefore, the ADA requires

that accessibility be improved without taking on excessive expenses that could harm the business."[6]

Prior to 2004, Charlie's Place already had a policy of offering curbside take-out and delivery service to anyone who requests it during all business hours. All menu items, without exception, are available for take-out and delivery. There is a clearly marked sign in the parking lot for the take-out area. There also is a clearly marked handicapped parking space directly adjacent to the front entrance of the restaurant that is greater than 42 inches in width. Any patron who requires take-out food delivered to the front door adjacent to the handicapped parking space can obtain it. In addition, the business offers delivery of food to any location in Wareham (where Charlie's Place is located) and parts of Bourne. Further, Charlie's Place has been host to innumerable numbers of patrons who are physically handicapped or who require wheelchairs. They have always been provided with the assistance necessary to ensure that all have complete access to the restaurant.

The ADA requires no more than this under the circumstances. The relevant regulations clearly state:

Sec. 36.305 (Alternatives to barrier removal)

(a) General. Where a public accommodation can demonstrate that barrier removal is not readily achievable, the public accommodation shall not fail to make its goods, services, facilities, privileges, advantages, or accommodations available through alternative methods, if those methods are readily achievable.

(b) Examples. Examples of alternatives to barrier removal include, but are not limited to, the following actions –
    (1) Providing curb service or home delivery; ...

---

[6] www.usdoj.gov/crt/ada/smbusgd.pdf

Charlie's Place has complied with ADA regulations by providing both curb service *and* home delivery. Section 36.305 only requires one or the other of these alternatives. In addition, Charlie's Place provides a clearly marked handicapped parking space directly adjacent to the front door and provides *actual* access to the inside of its restaurant by assisting any customer who requires it.[7] As a family-run business with a building constructed almost two decades before the ADA was enacted, these alternatives are more than sufficient to comply with the ADA.

IV.   Even Though Charlie's Place Is Currently in Full Compliance with the Requirements of the ADA, in the Spring of 2004 the Business Initiated Proactive Plans to Make Additional Renovations for the Specific Purpose of Enhancing Accessibility for Physically Handicapped Persons.

The ADA does not freeze a business's duties in time, and the defendant is well aware of this and in fact supports the ongoing duty established in the ADA to continue to remove physical barriers as appropriate and as this becomes achievable. The DOJ provides the following interpretation of the ADA in this regard:

> If you own or operate a business that serves the public you must remove physical 'barriers' that are 'readily achievable,' which means *easily accomplishable without much difficulty or expense.* The 'readily achievable' requirement is based on the size and resources of the business. So larger businesses with more resources are expected to take a more active role in removing barriers than small businesses. The ADA also recognizes that economic conditions vary. When a business has resources to remove barriers, it is expected to do so; but when profits are down, barrier removal may be reduced or delayed. Barrier removal is an

---

[7] It should be noted that there are only four steps from the street level to the floor of the restaurant, and the entrance doors are currently 42 (forty-two) inches wide.

ongoing obligation – you are expected to remove barriers in the future as resources become available.[8]

As a business that is proactive in providing access to as many customers as possible, including their existing and future handicapped clients, the defendant's owners began discussions with building contractors in the spring months of 2004, including those that specialize in renovating buildings to increase access for handicapped patrons in accordance with the ADA and other applicable laws. On August 5, 2004, one of these expert contractors provided an estimate of work to Charlie's Place that the business's owners accepted so that the work could begin in the spring of 2005. The work was to include relocating the existing stairs and entryway, installing a handicapped ramp and renovating existing bathroom facilities.

Section 36.304 of the DOJ's regulations prioritize removal of barriers into four categories: (1) access from public areas (including parking, entrance ramp, widening entrances, or providing accessible parking spaces); (2) access within the place of public accommodation (including rearranging tables); (3) access to restroom facilities; and (4) any other relevant measures. The planned renovations at Charlie's Place reflect the priorities described by the DOJ when a public accommodation can comply with barrier removal requirements that are easily accomplishable and without much difficult or expense.[9] Nevertheless, the estimated cost of the work as of August 5, 2004 was more than $37,000.

_____

[8] Id. (emphasis in original text)

[9] Sec.36.304 (Removal of barriers). (a) General. A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficult or expense.

12

It must be emphasized that Charlie's Place voluntarily undertook these efforts beginning in the spring of 2004 and was prepared to begin renovations in the spring of 2005 as soon as weather permitted so that the renovations could be completed before the busy summer season.  These actions clearly indicate a good faith and continuing effort by the defendant to remain in full compliance with the ADA and, indeed, even do more than is required.

IV.   Plaintiff's Counsel's Insistence That Defendant Pay Him Attorney's Fees to Settle This Case Are in Violation of the ADA and Will Have the Effect of Preventing Renovations So That Charlie's Place Can Become More Accessible.

All of the defendant's plans to renovate Charlie's Place in 2005 have been disrupted by an ironic event:  the filing of this unnecessary lawsuit by an attorney who values payment of his unearned attorney's fees more than effectuating the true purposes of the ADA.  When the complaint was filed, defendant's counsel promptly initiated communications with Attorney Garno in order to explain what counsel and his client (who defendant disputes has ever entered the premises of Charlie's Place) did not know:  that the business has a history of providing handicapped parking adjacent to the front door; that it provides take-out service, curb service, and delivery service; that it assists patrons who request it to gain complete access to the dining area; that it has many patrons who are handicapped or who use wheelchairs who enjoy access to the restaurant; and – most importantly – that Charlie's Place already had initiated plans for additional renovations with a specific timetable to complete them by mid-2005.

13

It has become apparent to defense counsel that the plaintiff's attorney is unimpressed with all of Charlie's Place's efforts to remain in full compliance with the ADA and is more interested in obtaining money at the expense of both Charlie's Place and his client. Plaintiff's counsel's unreasonable demand for attorney's fees has forced the defendant to halt any further expense in renovations while this tangential and bad faith effort is litigated by plaintiff's counsel. The threatened costs to litigate this demand, contrary to the existing law, has made the proactive barrier removal efforts, to which Charlie's Place was committed, no longer readily achievable and easily accomplishable without much difficulty or expense.

It is true that the ADA provides for attorney's fees (42 U.S.C. §12205) but only as a matter of discretion by the court. However, payment of such fees is *only* permitted under the law when the plaintiff becomes a "prevailing party" on the merits of the action. *Race v. Toledo-Davila*, 291 F.3d 857 (1st Cir. 2002) Given the factual history of this matter, it is impossible for the plaintiff to be a "prevailing party" in this matter.

An instructive case is *Ritter v. Clinton House Restaurant*, 64 F.Supp.2d 374 (D.C. N.J. 1999), in which the plaintiff was denied attorney's fees because the evidence showed that, from the outset of acquiring the restaurant in 1995, the new owners had planned and intended to render both the interior and the exterior totally accessible and code compliant (including the entrance and parking access), and the ADA case filed in 1996 was not a material contributing factor in

14

bringing about these modifications. The case before the Court presents exactly the same scenario but for the names of the parties and the dates.

     V.     The Plaintiff and Plaintiff's Counsel Are Engaged in Making an Improper "Business" of ADA Litigation That is Discouraged by the Judicial System.

There is another unfortunate set of facts to consider regarding Attorney Garno's focus on his attorney's fees. The plaintiff and Attorney Garno are well on the path to becoming a serial plaintiff and counsel. The plaintiff has filed at least five other cases under the ADA that are virtually identical. In four of them (not including the present litigation), Attorney Garno is the attorney of record.[10]

This pattern and practice of such plaintiff litigation is not without precedent. Emerging case law has drawn attention to efforts of enterprising plaintiffs and their attorneys who have found a way to circumvent the will of Congress. The trend toward inappropriate profiting from ADA litigation is now "a cottage industry." *Rodriguez v. Investco*, L.L.C., 305 F.Supp.2d 1278, 1280-81 (M.D.Fla. 2004). Courts that have determined the presence of such schemes have not hesitated to take action to stop them in their tracks. See, e.g., *Brother v. Tiger Partner, LLC*, 331 F.Supp.2d 1368, 1375 (M.D.Fla. 2004).

In December 2004, the United States District Court for the Central District of California issued an order declaring one such plaintiff a "vexatious litigant" and further ordered that the plaintiff, Jarek Molski, must put all future reviewing judges on notice of his litigious history by filing a copy of the Court's "vexatious

---

[10] Attorney Garno is plaintiff's counsel in Smith v. Water Wizz of Cape Cod, Inc. (D.Mass. 03-cv-11358-RGS); Smith v. D'Angelo Sandwich Shops, Inc. (D.Mass. 03-cv-11983-GAO); and Smith v. Cranberry Plaza Mobil, Inc. (D.Mass. 04-cv-10847-WGY); and Smith v. CDM Corporation (D.Mass. 04-cv-11944-NMG). Smith also has another ADA action, Smith v. Boston Red Sox (D.Mass. 02-cv-11406-WGY).

litigant" order whenever he files a new complaint. Furthermore, the Court
ordered Molski's legal counsel to show cause "why the Court should not exercise
its inherent power to extend similar sanctions to them, for their role in facilitating
Molski's abusive litigation practices." *Molski v. Mandarin Touch Restaurant*,
Order Granting Defendant's Motion to Declare Jarek Molski a Vexatious Litigant
and for a Pre-Filing Order Requiring Molski to Obtain Leave of Court Before
Filing Any Other Claims Under the Americans with Disabilities Act ["Affidavit of
Counsel, Exhibit 8"], p. 17 (CV 04-0450 ER, Edward Rafeedie, Senior United
States District Judge, December 9, 2004). As described by Judge Rafeedie in
his Order:

> ...The scheme is simple: an unscrupulous law firm sends a
> disabled individual to as many businesses as possible, in order to
> have him aggressively seek out any and all violations of the ADA.
> Then, rather than simply informing a business of the violations, and
> attempting to remedy the matter through 'conciliation and voluntary
> compliance, [*Rodriguez v. Investco, L.L.C.*, 305 F.Supp.2d] at
> 1281, a lawsuit is filed, requesting damage awards that would put
> many of the targeted establishments out of business....
>
> The result of this scheme is that 'the means for enforcing the
> ADA (attorney's fees) have become more important and desirable
> than the end (accessibility for disabled individuals).' *Brother v.
> Tiger Partner, LLC*, 331 F.Supp.2d 1368, 1375 (M.D.Fla. 2004).
> Serial plaintiffs, like Molski, serve as 'professional pawn[s] in an
> ongoing scheme to bilk attorney's fees.' *Rodgriguez*, 305
> F.Supp.2d at 1285. It is a 'type of shotgun litigation [that]
> undermines both the spirit and purpose of the ADA.' *Brother*, 331
> F.Supp.2d at 1375.

[Affidavit of Counsel, Exhibit 8 pp. 6-7].

Even assuming, *arguendo*, that a business is not in full compliance with
the ADA, a finding of bad faith in the commencement and prosecution of litigation
"does not require that the legal and factual basis for the action prove totally

16

frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of" sanctions. *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). Thus, where a lawsuit is commenced in bad faith – even against a business in violation of the ADA – for the improper purpose of extorting a settlement, sanctions are appropriate. [Affidavit of Counsel, Exhibit 6, p. 13]. While the actions of Attorney Garno and his client are not yet as demonstrably abusive as those of the parties involved in *Molski,* their concern for generating legal fees over promoting the purposes of the ADA are exactly the same.

It is troubling that such plaintiffs and attorneys continue to extort profit from the ADA's valid and praiseworthy purposes. Judge Rafeedie in the *Molski* case has written, "It is not beyond the realm of belief that the actions of Molski, and those like him, pose a… threat to the ADA." [Affidavit of Counsel, Exhibit 6, pp. 18-19] In California, for example, abuse of the state's Unfair Business Practices statute resulted in a sharp curtailing of the private attorney general provision by the electorate.

In a subsequent ruling, Judge Rafeedie ordered that a law firm that made a pattern and practice of instituting plaintiff ADA lawsuits would be required to file a motion requesting leave of court before filing any new complaints alleging violations of Title III of the ADA in the United States District Court for the Central District of California. (See Memorandum Decision re Orders to Show Cause, March 8, 2005 ["Affidavit of Counsel, Exhibit 9"].) The order noted that one-third of the lawsuits filed in 2004 "targeted ethnic restaurants – Asian and Mexican –

17

perhaps because such establishments are seen as easy prey for coercive claims." Seventy percent of those lawsuits were filed on behalf of one plaintiff. The complaints were almost identical.[11]  [Affidavit of Counsel, Exhibit 9, p. 5]

Judge Rafeedie points out that "[c]ourts have recognized that an unusual number of settlements can be evidence of an extortion scheme." [Affidavit of Counsel, Exhibit 9, p. 23]  An "indicia of extortion" is "an unusually high rate of discrimination lawsuits combined with an unusually high rate of settlements". [Affidavit of Counsel, Exhibit 9, p. 24]  Because of the facts present in the *Molski* case (and others like all involving the same law firm), Judge Rafeedie requested the State Bar to investigate the matter and consider disciplinary action if appropriate. [Affidavit of Counsel, Exhibit 9, p. 25]

VI.    Based on All of the Above Stated Circumstances, a Stay of Eight Months Would Best Accomplish the Purposes of the ADA and Is in the Best Interests of All Parties and Counsel.

A stay in the proceedings would accomplish several important objectives. It will allow Charlie's Place to make the renovations (which now will have to wait until after the imminent busy summer season or cause closure of the restaurant and irreparable economic harm) to make the business even more accessible than it is today.  It will allow plaintiff's counsel to reflect on the state of the law regarding attorney's fees so that he can make a strategic decision whether to proceed with his unjustified claim.  It will allow counsel for both parties to continue to work to effectuate a settlement that meets the true objectives of the ADA.  Alternative dispute resolution is encouraged by the ADA, and a stay may

---

[11] This is also the case with the complaints filed by Attorney Garno in the numerous ADA cases on behalf of the plaintiff.

18

provide additional cost effective opportunities to resolve the outstanding issue in this case – Attorney Garno's demand of attorney's fees – as well.[12]

Finally, and in consideration of the factual predicate of this case, because Charlie's Place has been and continues to contemplate and plan for renovations that are reasonably achievable and that will more than comply with the requirements of the ADA, it would seem inconsistent with the interests of the respective parties, judicial economy, and the intent and purpose of the Americans with Disabilities Act for the defendant to be forced to defend this frivolous and unnecessary claim.

### Prayer for Relief

**WHEREFORE:** the defendant requests the following relief:

1.  That all proceedings be stayed until January 16, 2006 to permit the defendant to complete planned renovations;

2.  That the plaintiff, through his designated representative, be permitted to inspect the premises upon completion of renovations on or before January 16, 2006;

3.  That a further Scheduling Conference be scheduled for January 16, 2006 to determine whether further legal proceedings are necessary; and,

---

[12] Sec.36.506 (Alternative means of dispute resolution). Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, and arbitration, is encouraged to resolve disputes arising under the Act and this part.

4.    Such other relief as the Court deems appropriate.

Respectfully submitted;

THE DEFENDANT
CHARLIE'S PLACE, INC.

By its attorneys:

Stephen J. Lyons
(BBO#309840)
KLIEMAN, LYONS, SCHINDLER
 & GROSS
21 Custom House Street
Boston MA 02110
Telephone: 617.443.1000

Dated:  May 11, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon

the attorney of record for each other party by mail on May 11, 2005.

Stephen J. Lyons